*In re* ROSE

Docket No. 107975. Submitted October 5, 1988, at Detroit. Decided
January 3, 1989. Leave to appeal applied for.

Cynthia Rose petitioned the Oakland County Probate Court to
allow her to adopt Kevin Jason Rose, the natural child of her
husband, Leigh Jeffrey Rose, and her husband's former wife,
Valerie Jean Schulz. Following a hearing, the court, Barry M.
Grant, J., terminated respondent Schulz' parental rights to her
son. Respondent appealed.

The Court of Appeals *held:*

1. Under the Adoption Code, the parental rights of a parent
not awarded custody of a child following divorce may be termi-
nated pursuant to a petition filed by the custodial parent's
current spouse if for a period of two years or more before the
filing of the petition (1) the respondent had the ability to
support, or assist in supporting, the child but failed or ne-
glected to provide regular and substantial support for the child
and (2) the respondent had the ability to visit, contact, or
communicate with the child ,but regularly and substantially
failed or neglected to do so. In this case, the trial court did not
clearly err in finding that, although respondent was on public
assistance, she had the ability to provide her son financial and
emotional support but failed or neglected to provide such
support for a period of more than two years before the filing of
the petition for adoption.

2. The trial court did not abuse its discretion in terminating
respondent's parental rights.

Affirmed.

1. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — AP-
   PEAL.
   The findings of a probate court in a proceeding to terminate

REFERENCES

Am Jur 2d, Parent and Child §§ 34, 35.
Validity of state statute providing for termination of parental
rights. 22 ALR4th 774.
Natural parent's parental rights as affected by consent to child's
adoption by other natural parent. 37 ALR4th 724.

parental rights are reviewed on appeal under the clearly erroneous standard.

2. ADOPTION — TERMINATION OF PARENTAL RIGHTS — ADOPTION CODE.

The parental rights of a parent who was not awarded custody of a child following divorce may be terminated pursuant to a petition by the custodial parent's current spouse if for a period of two years or more before the filing of the petition the respondent had the ability (1) to support, or assist in supporting, the child but failed or neglected to provide regular and substantial support for the child and (2) to visit, contact or communicate with the child but regularly and substantially failed or neglected to do so (MCL 710.51[6]; MSA 27.3178[551.51][6]).

*Schnelz & Bondy* (by *Kurt E. Schnelz*), for petitioners.

*John J. Cantarella,* for respondent.

*Erma Heck,* guardian ad litem for Kevin Jason Rose.

Before: DOCTOROFF, P.J., and SHEPHERD and R. R. LAMB,* JJ.

SHEPHERD, J. Respondent Valerie Schultz appeals as of right from a probate court order terminating her parental rights to her son Kevin Rose, born July 31, 1973, and granting Cynthia Rose's petition for adoption under the Adoption Code, MCL 710.51(6); MSA 27.3178(555.51)(6). We affirm.

Respondent Valerie Schultz and Leigh Rose divorced in January, 1980. The divorce judgment awarded physical custody of their two sons, Kevin and Scott, to respondent. In May, 1980, Leigh Rose married his present wife, petitioner Cynthia Rose. Several years later, in an order dated April 1, 1985, the probate court transferred physical custody of Kevin to his father, Leigh Rose. Respondent was given visitation rights. Sometime thereaf-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

ter, respondent moved to Pennsylvania. Respondent continued to receive child support for Scott pursuant to a support order, but had no support order in effect requiring her to pay support for Kevin.

In August, 1987, Cynthia Rose petitioned the probate court to adopt Kevin. Then, in October, 1987, Leigh Rose joined with his wife in petitioning the court to terminate respondent's parental rights to Kevin. The petition alleged that respondent had not provided regular and substantial support and had failed to visit, contact and communicate with Kevin for two years and six months, though having the ability to do so. Prior to the hearing on this matter, a guardian ad litem appointed for Kevin prepared a written report for the probate court on the petition. On March 3, 1988, the termination hearing was held. Respondent did not appear at the hearing but was represented by counsel. Witnesses were Kevin Rose, his father, Leigh Rose, and petitioner Cynthia Rose. After considering their testimony and reviewing the file on the petition, the court concluded that respondent did not behave as a responsible mother towards Kevin and that adoption would be appropriate. The probate court order, as amended on April 1, 1988, terminated respondent's parental rights because respondent "having the ability to support or assist in supporting the child, has failed or neglected to provide regular or substantial support for the child for a period of 2 years or more before the filing of the petition" and "having the ability to visit, contact or communicate with the child, has regularly and substantially failed or neglected to do so for a period of 2 years or more before the filing of this petition."

On appeal, respondent claims that the trial court erred in terminating her parental rights to

Kevin. Respondent argues that the evidence was insufficient to satisfy the statutory requirements for termination. By contrast, petitioner and the guardian ad litem argue that respondent waived this issue by failing to present it to the probate court and that, in any event, the evidence was sufficient.

We find support for petitioner's claim of waiver inasmuch as the court rules applicable to probate proceedings authorize motions for rehearings, MCR 5.992, and our Supreme Court recently held that, at least with regard to jury trials in civil proceedings, an alleged insufficiency in the evidence cannot be raised for the first time on appeal absent a showing of compelling or extraordinary circumstances amounting to a fundamental miscarriage of justice. *Napier v Jacobs,* 429 Mich 222, 238; 414 NW2d 862 (1987). However, a parent's right to the custody of his or her child is an important liberty interest protected by the Fifth and Fourteenth Amendments to the United States Constitution, *In re Martyn,* 161 Mich App 474; 411 NW2d 743 (1987), and, as with criminal proceedings, appellate review of plain error concerning the sufficiency of the evidence might be a parent's only remedy. *Napier, supra,* p 233, n 2. More importantly, the instant case was a bench trial and it is clear that a probate court's findings in a termination proceeding are reviewable on appeal under the clearly erroneous standard. *In re Cornet,* 422 Mich 274; 373 NW2d 536 (1985); *In re Martyn, supra,* p 478. Accordingly, while it may be a better practice to first raise issues concerning the court's factual findings in the probate court, we reject the claim of petitioner and the guardian ad litem that respondent's failure to do so constituted a waiver. The standard we apply to the court's factual findings is whether, after examin-

ing all the evidence, we are left with a definite and firm conviction that a mistake was made, *In re Martyn, supra,* p 478, and the burden of proof we consider in examining the record is whether petitioner proved by clear and convincing evidence that a termination of parental rights was warranted. *Id.*

The statutory requirements for terminating parental rights under the Adoption Code are:

> If the parents of a child are divorced, or if the parents are unmarried but the father has acknowledged paternity or is a putative father who meets the conditions in section 39(2) of this chapter, and if the parent having legal custody of the child subsequently marries and that parent's spouse petitions to adopt the child, the court upon notice and hearing may issue an order terminating the rights of the other parent if both of the following occur:
>
> (a) The other parent, having the ability to support, or assist in supporting, the child, has failed or neglected to provide regular and substantial support for the child or if a support order has been entered, has failed to substantially comply with the order, for a period of 2 years or more before the filing of the petition.
>
> (b) The other parent, having the ability to visit, contact, or communicate with the child, has regularly and substantially failed or neglected to do so for a period of 2 years or more before the filing of the petition. [MCL 710.51(6); MSA 27.3178(555.51)(6).]

The primary purpose of this statute is to foster step-parent adoption in families where the natural parent regularly and substantially fails to support and communicate with the child. *In re Colon,* 144 Mich App 805, 810; 377 NW2d 321 (1985). Hence, under subsection (a) of the statute, a petitioner

must prove financial neglect on the part of the noncustodial parent and, under subsection (b), a petitioner must prove emotional neglect as evidenced by the lack of visitation, contact, or communication.

Respondent argues that the requirements of subsection (a) were not satisfied because the guardian ad litem's report prepared for the probate court indicated that respondent was on public assistance (ADC) and that respondent apparently did not have sufficient funds to pay for Kevin to visit her. Respondent suggests that the requirements of subsection (a) cannot be established where the noncustodial parent is poor or on public assistance because such a parent will not be able to provide regular and substantial financial support to the child. However, our reading of the plain language of the statute indicates that the term "regular and substantial" must be determined in relation to the parent's ability to support or assist in supporting the child.

Here, the record indicates that respondent was on public assistance and, hence, it is reasonable to infer that, although limited, she had the ability to provide some financial support for Kevin. The fact that she may not have enough funds to afford air fare for Kevin to visit her in Pennsylvania at the time the guardian ad litem conducted his investigation does not indicate that she could not provide any financial support for Kevin's material needs during at least the two-year period preceding the filing of the petition. What is, however, clear from the record is that respondent failed to make even token payments, in money or kind, to provide material support to Kevin for over two years preceding the filing of the petition for termination in 1987. Had respondent been genuinely interested in providing financial support for Kevin, she could

have demonstrated that interest by offering a token allowance to Kevin from time to time. There being undisputed evidence that respondent had a source of income and no evidence to explain why she could not use any of that income to provide material support for Kevin, we conclude that there was clear and convincing evidence that respondent, although having the ability to support or assist in supporting Kevin, failed or neglected to do so and that the probate court's factual findings under subsection (a) of the statute were not clearly erroneous.

The probate court's findings with regard to the emotional neglect standard of subsection (b) similarly fails to demonstrate clear error. It is apparent from the court's factual findings that it believed Kevin's testimony that respondent only sent him about five cards in the past few years. Respondent argues that the court should not have considered Kevin's testimony at all but has failed to support her argument with supporting authority and did not object to the testimony in the probate court. Hence, we do not address this evidentiary issue. See *In re Futch,* 144 Mich App 163, 166; 375 NW2d 375 (1984).

We find that the probate court's finding of emotional neglect was supported by clear and convincing evidence. In addition to the lack of regular and substantial contacts by letter, the testimony of Kevin, age fourteen, indicated that respondent did not send him birthday cards until about a month after his birthday, that she did not begin remembering holidays until after this petition came up, and that he had only one period of visitation for about 1½ weeks with respondent during the two years preceding the filing of the petition. Although respondent may have been unable to visit Kevin as a result of her limited financial resources, Kevin's

testimony, if believed, clearly established that respondent failed to pursue alternative means of regular and substantial contacts such as letter writing. Further, although it does appear that respondent made some effort to contact respondent by telephone, the period wherein respondent made the phone calls is unclear from Kevin's testimony and there is nothing to indicate that the phone calls were made on a regular basis. To the contrary, Kevin indicated that respondent did not make an effort to contact him regularly until after the petition was filed. By then, it was too late since the statute requires that neglect be determined based on the respondent's conduct preceding the filing of the petition.

In summary, the regular and substantial support required by subsection (a) of the statute must be measured in terms of the parent's ability to pay. In this case respondent had some minimal ability to make at least token material support and failed to do so. Under subsection (b) there must be an attempt to make visits, contact or communication on a regular basis. Respondent's attempts were irregular and sporadic and not at all consistent with a parent's obligation to demonstrate care and affection for a child.

We conclude that the probate court did not clearly err in finding that both the financial and emotional neglect standards required to terminate parental rights under MCL 710.51(6); MSA 27.3178(555.51)(6) were established. In *In re Martyn, supra,* pp 479-480, this Court indicated that the probate court's ultimate decision to terminate parental rights where the statutory requirements were proven is permissive rather than mandatory and, thus, is reviewed for an abuse of discretion. Respondent here argues that the probate court

abused its discretion, but has based the argument on a claim that the evidence upon which the decision was made was less than clear and convincing. We have rejected this argument and, finding no abuse of discretion in the probate court's decision to terminate respondent's parental rights and to approve the adoption, we affirm the probate court's decision.

Affirmed.